730 A.2d 285

TIMOTHY PATRICK SHARPE, PLAINTIFF–APPELLANT, v. BES-
TOP, INC., A CORPORATION OF THE STATE OF COLORADO
AND SEARS ROEBUCK AND CO., A CORPORATION OF THE
STATE OF NEW YORK, DEFENDANTS–RESPONDENTS, AND
CHRYSLER CORPORATION, A CORPORATION OF THE STATE
OF DELAWARE, INDIVIDUALLY AND AS SUCCESSOR TO
AMERICAN MOTORS CORP:, AND ABC COMPANIES 1–10, FIC-
TITIOUS CORPORATIONS OR ENTITIES, DEFENDANTS.

Argued March 29, 1999—Decided May 12, 1999.

*John B. Collins,* argued the cause for appellant (*Bongiovanni, Collins & Warden,* attorneys, *Mr. Collins* and *Anthony P. Caivano,* on the brief).

*Robert G. Hampson,* argued the cause for respondents.

PER CURIAM.

We affirm the judgment of the Appellate Division substantially for the reasons stated in its opinion reported at 314 *N.J.Super.* 54, 713 *A.*2d 1079 (1998). We wish simply to note the court's careful distinction between habit and character evidence when offered by product manufacturers seeking to overcome the heeding presumption that was established in *Coffman v. Keene Corp.,* 133 *N.J.* 581, 628 *A.*2d 710 (1993). Specifically, the Appellate Division in this case held that only evidence of a habit related to the specific situation of a seat-belt warning, not a character trait, may be offered to rebut the heeding presumption. 314 *N.J.Super.* at 77, 79, 713 *A.*2d 1079.

In *State v. Radziwil,* 235 *N.J.Super.* 557, 563 *A.*2d 856 (App.Div. 1989), *aff'd o.b.,* 121 *N.J.* 527, 582 *A.*2d 1003 (1990), this Court approved of the following analysis of the distinction between habit and character evidence:

> The two are easily confused. People sometimes speak of a habit for care, a habit for promptness, or a habit of forgetfulness. They may say that an individual has a bad habit of stealing or lying. Evidence of these "habits" would be identical to the kind of evidence that is the target of the general rule against character evidence. Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. *Habit,* in the present context, is more *specific.* It denotes one's *regular response to a repeated situation.* If we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life—in business, at home, in handling automobiles and in walking across the street. A *habit,* on the other hand, is the person's *regular practice of responding to a particular kind of situation with a specific type of conduct.* Thus, a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a

particular pub after each day's work, or of *driving his automobile without using a seatbelt*. The doing of the habitual act may become semi-automatic, as with a driver who invariably signals before changing lanes.

[235 *N.J.Super.* at 564, 563 *A.*2d 856 (quoting *McCormick on Evidence*, § 195 at 574–75 (3d ed.1984) (footnotes omitted)) (emphasis added).]

In *Radziwil, supra,* the court concluded that evidence of the defendant regularly becoming intoxicated each weekend at a specific bar was admissible as habit evidence to prove that the defendant was intoxicated when he fatally injured an individual in an automobile accident.

In this case, the Appellate Division concluded that plaintiff's habitual disregard of the identical product safety warning to "WEAR SEAT BELTS AT ALL TIMES" was admissible as evidence of a regular response to a repeated situation (including this occasion when only the vehicle's soft top was on), while his occasional disregard of warnings not to drink and drive was not admissible, although it found that error to be harmless. 314 *N.J.Super.* at 79–80, 713 *A.*2d 1079. (There was no evidence that plaintiff habitually drove while impaired, and the many circumstances in which driving after one or two drinks would not be unsafe made the evidence especially suspect, in contrast to the defendant's habitual intemperance in *Radziwil*.)

New Jersey Rule of Evidence 406 is derived from *Federal Rule of Evidence* 406, which provides: "Evidence of the habit of a person … is relevant to prove that the conduct of the person … on a particular occasion was in conformity with the habit or routine practice." As stated in *Thompson v. Boggs,* 33 *F.*3d 847, 854 (7th Cir.1994), *cert. denied,* 514 *U.S.* 1063, 115 *S.Ct.* 1692, 131 *L.Ed.*2d 556 (1995):

[T]he Advisory Committee [on the Federal Rules] noted in its Comment to Rule 406 [that] habit "describes one's regular response to a repeated specific situation." "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Systems, Inc.,* 847 *F.*2d 1290, 1293 (7th Cir.1988).

"The party offering the evidence must establish the habitual nature of the alleged practice. * * * Although there are no precise standards for determining

whether a behavior pattern [such as bounding down stairs two or three at a time] has matured into a habit, two factors are considered controlling as a rule: adequacy of sampling and uniformity of response." *United States v. Newman,* 982 *F.*2d 665, 668 (1st Cir.1992), *cert. denied,* 510 *U.S.* 812, 114 *S.Ct.* 59, 126 *L.Ed.*2d 28 (1993).

In short, "[s]pecificity distinguishes 'habit' from 'character.'" 23 *Fed. Practice and Procedure Evid.* § 5273 (*R.* 406) n. 53 (citing *Jones v. Southern Pacific R.R.,* 962 *F.*2d 447, 449 (5th Cir.1992)) (holding that nine diverse safety violations do not show "habit" of negligence). Thus, for example, we would not find that evidence of one's repeated failure to follow a doctor's advice to lose weight, is sufficiently similar in character and quality to establish the likelihood of a similar response to a safety warning concerning boating waters. *See Verdun v. State, Through Dep't of Health and Human Resources,* 598 *So.*2d 1091, 1095 (La.Ct.App.), *writ denied,* 604 *So.*2d 1003 (La.1992).

We would also hesitate to endorse rebuttal evidence that focuses on the product user as one who may be "illiterate, . . . irresponsible or lax in judgment . . . ." *Technical Chem. Co. v. Jacobs,* 480 *S.W.*2d 602, 606 (Tex.1972) (quoted in *Coffman, supra,* 133 *N.J.* at 604, 628 *A.*2d 710). The latter two factors are clearly character traits. Unless a claimant has somehow put character at issue, these traits would appear to be inadmissible. The first factor is of little relevance in this context. Some unlettered people are far more proficient than the lettered in dealing with machinery. Moreover, in *Campos v. Firestone Tire & Rubber Co.,* 98 *N.J.* 198, 208, 485 *A.*2d 305 (1984), the Court emphasized that product warnings must be tailored to the circumstances of the user when known, including the needs of the "unskilled" or "[those] who do not read English."

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—none.