980 A.2d 17 (2009)
410 N.J. Super. 142
STATE of New Jersey, Plaintiff,
v.
Jermaine WRIGHT, Defendant.
INDICTMENT 08-07-00162-S, SGJ577-08-26
Superior Court of New Jersey, Law Division, Mercer County.
Decided August 15, 2008.
Approved for Publication April 30, 2009.
*18 Russell J. Curley, Deputy Attorney General, for plaintiff (Anne Milgram, Attorney General).
Robin Kay Lord, Trenton, for defendant.
OSTRER, J.S.C.

INTRODUCTION
In advance of a requested bail source hearing pursuant to N.J.S.A. 2A:162-13, this court concludes that the State bears the burden of persuasion. However, after the State makes a prima facie case that the bail the defendant has offered is inadequate to assure his appearance, the defendant bears the burden of producing evidence to the contrary. The State must prove that the bail is inadequate by a preponderance of the evidence. In support of these conclusions, the court relies on general principles governing the allocation *19 of burdens of proof and standards of proof, as well as persuasive case law.

BACKGROUND
Jermaine Wright and co-defendant, Manuela Whitfield, were arrested June 16, 2008. Police allegedly found that they possessed 305 grams of powder cocaine and 70 grams of crack cocaine. The municipal court set bail for defendant at $150,000 cash or bond. On June 25, 2008, defendant appeared before Presiding Judge Gerald Council for a bail hearing. The State argued for an increase in bail, asserting that defendant faced exposure to significant terms of incarceration presenting a high risk of flight. The State noted that when defendant was arrested on June 16, 2008, he was free on $135,000 bail on another first degree CDS charge. Judge Council set bail at $200,000 cash or bond.
Immediately after Judge Council's decision, the State announced its interest in a bail source hearing. On July 8, 2008, a state grand jury indicted defendant, charging him with first degree possession of CDS with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and -5(b)(1); second degree conspiracy, contrary to N.J.S.A. 2C:5-2; second degree possession of CDS with intent to distribute within 500 feet of public property, contrary to N.J.S.A. 2C:35-5(a)(1), -5(b)(3), -7.1, and N.J.S.A. 2C:2-6; and third degree possession of CDS with intent to distribute within 1000 feet of school property, contrary to N.J.S.A. 2C:35-5(a)(1), -5(b)(3), -7.1, and N.J.S.A. 2C:2-6.
The bail source hearing was assigned to this judge. The matter was scheduled for August 1, 2008. Before the hearing, the court asked counsel to address the issues of burden of persuasion and standard of proof. Briefs were received and the issues were argued on August 1, and 7, 2008.

DISCUSSION
The court will address the statutory language and the scope of the adopted court rule. The court will then consider general principles governing how to allocate a burden of proof, and then apply those principles to this case in light of other relevant case law in this state and other jurisdictions.

The Statute
According to the plain language of N.J.S.A. 2A:162-13(a), a defendant must disclose information regarding the source of bail on a form that the Attorney General has promulgated. The form elicits information about
the obligor, the indemnifier or person posting cash bail, the security offered, the source of any money or property used to post the cash bail or secure the surety or bail bond, as the case may be. This required information shall include. . . the defendant's employment history, the names and addresses of any persons who contributed money or pledged security for the proffered bail or toward a surety bond, the amount, nature and timing of such contributions, and the relationship to the defendant of any such persons contributing resources.
[Ibid.]
The statute mandates a hearing upon the prosecutor's request in certain serious cases and authorizes a hearing in the court's discretion in other cases. Specifically, the court must hold a bail source hearing upon a prosecutor's request, if the defendant is charged with a crime subject to bail restrictions under N.J.S.A. 2A:162-12, which includes first and second degree drug offenses with which defendant is charged. The court "may, upon the request of the prosecutor" conduct a hearing in other cases. N.J.S.A. 2A:162-13(b).[1]
*20 If the court holds a hearing, the court may "inquire into any matter appropriate to its determination." Ibid. These matters may include:
(1) The character, background and reputation of the person posting cash bail;
(2) The relationship of the person posting cash bail or securing a bail bond to the defendant;
(3) The source of any money posted as cash bail and whether any such money constitutes the fruits of criminal or unlawful conduct;
(4) The character, background and reputation of any person who has indemnified or agreed to indemnify an obligor on the bond;
(5) The character, background and reputation of any obligor, or, in the case of a surety bond, the qualifications of the surety and its executing agent;
(6) The source of any money or property deposited by any obligor as security and whether such money or property constitutes the fruits of criminal or unlawful conduct; and
(7) The source of any money or property delivered or agreed to be delivered by any obligor as indemnification on the bond and whether such money or property constitutes the fruits of criminal or unlawful conduct.
[Ibid.]
The court may approve the issuance of bail only upon affirmatively finding that the source is reliable, the obligor's relationship to the defendant is close enough to assure his appearance in court, and the funds are untainted. Ibid.
However, the statute does not expressly address whether the defendant bears the burden to show the bail source is satisfactory or the State bears the burden to show, it is not. The statute is silent on the standard of proof.
Arguably, the statute implicitly imposes on the defendant the burden to produce evidence. It does this by requiring the court, after considering the evidence presented at a hearing, to deny the bail unless it is satisfied that it is sufficient, reliable, and untainted.
The court shall not issue an order approving the bail unless it is satisfied that the evidence adduced in the inquiry establishes the reliability of the source of the funds used to post bail or security offered, that the relationship of the obligor or person posting cash bail is sufficient to ensure the defendant's presence in court when required, and that the funds used to post cash bail or secure a bail bond were not acquired as a result of criminal or unlawful conduct.
[N.J.S.A. 2A:162-13(b).]
If neither party presents any evidence at the hearing, then the only evidence presented in support of the bail is produced by the defendant in the form of the information provided in the required forms.
The Supreme Court recently adopted a rule to implement the statute, but it declined to allocate the burden of proof or define the standard of proof. See R. 3:26-8, effective September 1, 2008 (Notice to the. Bar, July 15, 2008). The Criminal Practice Committee considered these same questions, but ultimately failed to reach consensus. See Criminal Practice Committee Report, Rule Recommendations Rules 3:26-1 and 3:26-8, Notice to the Bar, *21 March 31, 2008, at pp. 9-11 (hereinafter "Criminal Practice Committee Report"). Ultimately, the Committee recommended, and the Supreme Court approved, a rule that required the State to make an initial showing to obtain a hearing in cases involving charges not subject to bail restrictions. The Rule provides:
[T]he State must demonstrate a reasonable and well grounded basis to warrant an inquiry by the court regarding (1) the reliability of the obligor or person posting cash bail, the value and sufficiency of any security offered, the relationship of the obligor or person posting cash bail to the defendant and the defendant's interest in ensuring that the bail is not forfeited, or (2) whether the funds used to post the cash bail or secure the bail bond were acquired as a result of criminal or unlawful conduct.
[R. 3:26-8(b).]
The Rule does not require an initial showing in cases involving serious charges subject to bail restrictions.

Burden of Proof, Burden of Production, and Standard of Proof
The court will review general principles of allocation of burdens of proof and apply them to this case, particularly in light of persuasive authority governing burden of proof in analogous settings. The court will then address shifting the burden of production, and the standard of proof.
Our Supreme Court has characterized the allocation of burdens of proof as a procedural matter, "normally reserved for the courts." In re Will of Smith, 108 N.J. 257, 264, 528 A.2d 918 (1987). The appellate court reached the same conclusion in Mercedes-Benz Credit Corp. v. Lotito, 328 N.J.Super. 491, 510, 746 A.2d 480 (App. Div.), certif. denied, 165 N.J. 137, 754 A.2d 1213 (2000). "Generally, burdens of proof are not allocated in statutory law but are left to the courts as matters of procedure." Ibid. But see Busik v. Levine, 63 N.J. 351, 365, n. 4, 307 A.2d 571 (1973), appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (noting that burden of proof may be deemed procedural for some purposes and not for others).
Presumably, the Court in In re Will of Smith, supra, stated that allocating a burden of proof is "normally reserved for the courts," because the Supreme Court retains ultimate authority over procedure pursuant to its rule-making power under N.J. Const. art. VI, § II, ¶ 3. Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950). On the other hand, the Court may decline to assert its exclusive authority in the interests of comity. In re P.L.2001, Chapter 362, 186 N.J. 368, 381, n. 1, 895 A.2d 1128 (2006) ("In the twilight area between practice and procedure and substantive law, this Court in the spirit of comity has attempted to accommodate legitimate expressions of legislative authority and has shared responsibility with the Legislature in key areas of joint concern."). As noted above, the Supreme Court declined to resolve the burden-of-proof issue when it adopted the rule governing bail sufficiency hearings, leaving the matter to case law development.
In determining how to allocate the burden of persuasion, the court must consider several factors. A party's access to proofs tends to support allocating the burden of proof to that party. "We generally have imposed the burdens of persuasion and production on the party best able to satisfy those burdens. . . . Our decisions have recognized that the party with greater expertise and access to relevant information should bear those evidentiary burdens." J.E. ex rel. G.E. v. State, 131 N.J. 552, 569-70, 622 A.2d 227 (1993). Accord County of Essex v. First Union Nat'l *22 Bank, 186 N.J. 46, 60, 891 A.2d 600 (2006); Caldwell v. Haynes, 136 N.J. 422, 437, 643 A.2d 564 (1994).
Also, the burden of establishing a fact is generally placed "`on the person relying thereon.'" County of Essex v. First Union Nat'l Bank, 373 N.J.Super. 543, 555, 862 A.2d 1168 (App.Div.2004), aff'd in part and rev'd in part on other grounds, 186 N.J. 46, 891 A.2d 600 (2006) (citation omitted). See also N.J.S.A. 2C:1-13(d) (providing that under the Code of Criminal Justice, the burden of proving a fact which does not constitute an element of an offense is on the party "whose interest or contention will be furthered" if the fact is found to have been proven).
Yet, the court may consider other factors as well, including the parties' comparative interests, and the nature and objectives of the proceeding.
We have recognized in a variety of contexts that the burden of proof can vary depending on the type of proceedings, the comparative interests of the parties, the relative litigational strengths or weaknesses of the parties, the access of the parties to proof, and the objectives to be served by the evidence in the context of the particular proceeding.
[Romano v. Kimmelman, 96 N.J. 66, 89, 474 A.2d 1 (1984).]
The "type of proceeding" and the "comparative interests of the parties" loom large. Our Constitution guarantees that "[a]II persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." N.J. Const. art. I, ¶ 11. Excessive bails are expressly banned. N.J. Const. art. I, ¶ 2. "[I]n New Jersey the right of the individual to bail before trial is a fundamental one." State v. Johnson, 61 N.J. 351, 355, 294 A.2d 245 (1972). The right to bail is linked to the presumption of innocence. "[P]re-trial release on non-capital charges was a fundamental right founded in freedom and human dignity, reflected in the everpresent presumption of innocence, and requiring firm articulation in the Constitutions." Id. at 360, 294 A.2d 245. Thus, the defendant's strong interest in liberty before conviction, and the presumption of innocence, favor allocating the burden of persuasion to the State.
On the other hand, by referring to "sufficient sureties," the Constitution assures that bail shall be set at an amount to assure the defendant's appearance. "[T]he primary purpose of bail in this State is to insure presence of the accused at the trial. . . ." Id. at 364, 294 A.2d 245. Thus, the amount of the bond must be set at such amount "as in the judgment of the trial court under the circumstances of the case will insure his appearance at the trial." Id. at 359-60, 294 A.2d 245.[2] If the court is convinced that no amount of bail will assure the defendant's appearance, bail may be denied. Ibid. Yet, the court may condition bail on satisfying other goalssuch as the community's safety, or preventing offenses while on bail.[3]
*23 In the context of a bail source hearing, the courtby Judge Councilhas already determined that $200,000 bail, in the form of cash or bond, is sufficient to assure defendant's appearance. Now, the State seeks to overturn that decision by asserting that its source renders the bail insufficient. The State asserts that the bail is thus tainted and should be rejected. Consistent with the principle that the party relying on a fact has the burden to establish it, the State should have the burden of persuasion.
Our appellate court has allocated the burden of persuasion on the State in similar proceedings. The State bears the burden to prove by a preponderance of the evidence why a defendant should be denied a ten percent option on bail. State v. Casavina, 163 N.J.Super. 27, 31, 394 A.2d 142 (App.Div.1978) ("[T]he [ten percent cash bail program] is presumed to be available to all defendants. The burden of proving grounds for exclusion by a preponderance of the evidence rests with the State."). Assuming a defendant is otherwise bailable when charged with a capital offense, the State bears the burden to show that bail should be denied because "the proof is evident or presumption great" under paragraph 11 of Article I. See State v. Engel, 99 N.J. 453, 471, 493 A.2d 1217 (1985) ("In addition to demonstrating at the bail hearing that there is a likelihood of conviction, the State, as noted earlier, also has the burden under Rule 3:26-1 (a) to establish that there are reasonable grounds to believe that the death penalty may be imposed.").
Authority from other jurisdictions relies on the right to bail in assigning the burden of persuasion to the government. Because federal bail law generally creates a presumption of release on the defendant's recognizance, the federal government bears the burden to show that a bond is needed, or that no bond would be sufficient to assure the defendant's appearance. See United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir.2007) (government has burden under federal Bail Reform Act to show that defendant poses a risk of flight and that no conditions would reasonably assure defendant's presence).
Likewise, the Supreme Court of Rhode Island held unconstitutional a bail source law that allocated the burden of proof to a defendant to show that the proffered bail was untainted. Rhode Island v. Zorillo, 565 A.2d 1259 (R.I.1989). "This court places the burden of proving that a defendant's bail should be denied on the state. When the burden of proof is placed on the state, the presumption of a defendant's innocence is secured." Id. at 1260-61. Like New Jersey, Rhode Island generally grants its citizens the constitutional right "to be bailed by sufficient surety." Id. at 1261, n. 1. The Rhode Island statute expressly allocated to a defendant the burden to "establish to the satisfaction of the court . . . that the *24 source of money is from a legal enterprise.. . ." Id. at 1261, quoting R.I. Gen. Laws § 12-13-23. The court noted that Rhode Island was not required to make any preliminary showing before obtaining the hearing. Ibid. As in this case, the bail source hearing is held after the court has initially granted bail. Ibid.[4]
This court is unpersuaded by New York authority, assigning the burden of persuasion to a defendant. See People v. McIntyre, 168 Misc.2d 556, 640 N.Y.S.2d 386, 387-88 (Sup.Ct.1996) (stating that defendant has burden in bail source hearing to establish appropriateness of bail, as defendant has burden to persuade court that bail should be granted). However, the State must initially show that there is cause to question the source of the bail unlike New Jersey's law as it applies to offenses subject to bail restrictions. N.Y.Crim. Proc. L. 520.30(1) (district attorney must show "reasonable cause to believe that the person posting cash bail is not in rightful possession of money posted as cash bail or that such money constitutes the fruits of criminal or unlawful conduct"). More importantly, New York's decision requiring a defendant to persuade the court that he is entitled to bail is unpersuasive because there is no constitutional right to bail in New York. The right to bail is a statutory creation, which presumably the New York Legislature may encumber.
Thus it has been left to the Legislature to determine in what cases bail is to be allowed as of right and in what cases the matter of grant or refusal is to be confided to the court's discretion. The result is that a statute which makes it discretionary with a court to allow or refuse bail does not in itself offend against the Constitutional ban against the requiring of excessive bail.
[People ex rel. Shapiro v. Keeper of City Prison, 290 N.Y. 393, 49 N.E.2d 498, 500 (1943).]
By contrast, New Jersey, like many states, has granted its citizens the right to bail at least since the 1844 Constitution. N.J. Const. of 1844, art. I, § 10 ("All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or presumption great.").
This court also rejects the State's argument that defendant's greater access to information about the source of the funds used to obtain a bond, or the background of indemnitors or obligors, justifies assigning him the burden of persuasion. As discussed above, the availability of proofs is just one factor the court may consider in allocating the burden, but it is by no means the only factor. The "type of proceeding" and the "comparative interests of the parties"particularly a, defendant's interest in the presumption of innocence favor allocating the burden to the State. Moreover, the State should bear the burden because it seeks to set aside an order already in place based on its claim that the bail is tainted or otherwise insufficient after all.
On the other hand, defendant's greater access to evidencefor example, evidence about the source of the bond, his own financial background and that of obligors or indemnitorsjustifies imposing a burden of production on him once the State makes a prima facie case that the bail should be rejected. As discussed above, the statute implicitly imposes a burden of production on a defendant.
*25 In other contexts, our courts have approved shifting a burden of production to a defendant, notwithstanding that the State retains the burden of persuasion. See State v. Lee, 96 N.J. 156, 160, 475 A.2d 31 (1984) (analyzing N.J.S.A. 2C:39-3(e), State has unshifting burden of proof of possession of certain weapons such as dirks, daggers and stilettos, but shifts to defendant "the burden of going forward on the issue of `lawful purpose.'"); State v. Dunlap, 181 N.J.Super. 71, 76, 436 A.2d 569 (Law Div.1981) (noting that N.J.S.A. 2C:39-3 simply "places upon the defendant the burden of going forward with evidence peculiarly within his knowledge."). See also State v. Hock, 54 N.J. 526, 537, 257 A.2d 699 (1969) (upon State's showing that gun was of type that could not be legally possessed without a permit, the defendant had the duty of going forward with some evidence of the holding of a permit; but this did not alter the State's ultimate burden of persuasion). Likewise, once the State establishes a prima facie case that the bail is insufficient, the defendant must come forward with proofs within his control that would sustain the bail.
This approach is consistent with the framework adopted in McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677-78 (1973), to prove disparate treatment under antidiscrimination laws. A plaintiff must establish a prima facie case of discrimination. Then the burden of production shifts to the defendant to justify the employment action adverse to the plaintiff. Under that framework, the plaintiff bears the ultimate burden of persuasion; it never shifts. See, e.g., Viscik v. Fowler Equip. Co., 173 N.J. 1, 14, 800 A.2d 826 (2002) ("[A] plaintiff retains the ultimate burden of persuasion at all times, only the burden of production shifts."). The Criminal Practice Committee considered whether this approach should govern bail source hearings, but, as noted above, ultimately left open the issue of burdens of persuasion and production. See Criminal Practice Committee Report at 11.
Our courts have also shifted the burden of production to defendants where the plaintiff enjoys the benefit of a presumption, but nonetheless retains the ultimate burden of persuasion. See, e.g., Sharpe v. Bestop, Inc., 314 N.J.Super. 54, 68, 713 A.2d 1079 (App.Div.1998), aff'd o.b., 158 N.J. 329, 730 A.2d 285 (1999) ("presumption does no more than shift the burden of production to the party against whom it is directed"). The establishment of a prima facie case that the bail is unreliable, insufficient or tainted effectively gives rise to a presumption that it is so. See Viscik v. Fowler Equip. Co., supra, 173 N.J. at 14, 800 A.2d 826 (once established, a prima facie case under the McDonnell Douglas framework "gives rise to a presumption of discrimination"). It should not be extremely difficult for the State to meet its initial burden in appropriate cases. In some cases based on nothing more than the bail source forms themselves, the State may satisfy its burden of persuasion that the bond is unacceptablebecause the obligor is unreliable, the bond is insufficient to assure appearance, and/or the funds are tainted with illegality.
Lastly, the court finds that the State must meet the preponderance-of-the-evidence standard of proof in persuading the court that bail should be rejected. Determining the standard of proof is traditionally a judicial function, absent direction to the contrary from the legislative branch. Steadman v. SEC, 450 U.S. 91, 95, 101 S.Ct. 999, 1004, 67 L.Ed.2d 69, 74 (1981). In setting a standard of proof, one must make a judgment about how convinced the fact-finder must be in his judgments, and how to allocate the risk of error. See *26 State v. Oliver, 162 N.J. 580, 590-91, 745 A.2d 1165 (2000) ("The function of the standard of proof . . . `is to instruct the fact finder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication.'") (citations omitted); Comas v. Comas, 257 N.J.Super. 585, 591, 608 A.2d 1005 (Ch.Div.1992) ("`The standard [of proof] serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.'") (citation omitted).
In deciding whether to deny ten percent bail, the court in State v. Casavina, supra, struck the balance by imposing a preponderance-of-the-evidence standard of proof on the State. A higher standard of proof would certainly reduce the risk of errors disfavoring the defendant. On one hand, a defendant may argue that at least a clear-and-convincing standard of proof should apply because the State's success would affect the defendant's liberty. See Addington v. Texas, 441 U.S. 418, 425, 431-33, 99 S.Ct. 1804, 1809, 1812-13, 60 L.Ed.2d 323, 330-31, 334-35 (1979) (clear-and-convincing standard of proof applies to involuntary civil commitment because of deprivation of liberty involved). But see State v. Howard, 110 N.J. 113, 130-31, 539 A.2d 1203 (1988) (preponderance-of-the-evidence standard applies to State's proof that convicted sex offender should be treated at special facility at Avenel, in view of defendant's diminished liberty interest, inasmuch as he is already convicted of crime). On the other hand, the State has a substantial interest in assuring that the Constitutional condition of bail be met that is, that a defendant be bailable upon sufficient sureties. State v. Casavina, supra, 163 N.J.Super. at 30, 394 A.2d 142, is binding authority that the State must prove facts necessary to deny bail by a preponderance of the evidence.

Conclusion.
In sum, the State bears the burden of persuasion that the bail does not satisfy the requirements of the statute, N.J.S.A. 2A:162-13(b). However, upon prima facie proof by the State that the bail is unreliable, insufficient, or tainted, then the burden of production shifts to the defendant.
NOTES
[1] The statute is silent on the kind of showing the State must make in order to obtain a hearing in cases involving charges not subject to "bail restrictions" under N.J.S.A. 2A:162-12. However, the newly adopted bail sufficiency rule effective September 1, 2008, addresses this issue. See discussion infra.
[2] Courts of other states, whose constitutions include the same "sufficient sureties" language, agree that "sufficient" means sufficient to assure a defendant's appearance. See, e.g., People ex rel. Gendron v. Ingram, 34 Ill.2d 623, 217 N.E.2d 803, 806 (1966) ("Sufficient. . . means sufficient to accomplish the purpose of bail, not just the ability to pay in the event of a `skip.'"); Iowa v. Briggs, 666 N.W.2d 573, 581-82 (Iowa 2003) (discussing meaning of "sufficient sureties" in context of extensive discussion of origin of "sufficient sureties" clause in various state constitutions).
[3] A court may condition bail on the defendant avoiding contact with an alleged victim which responds to the goal of protecting the public. See R. 3:26-1(a) ("The court may also impose terms or conditions appropriate to release including conditions necessary to protect persons in the community."). Or a court conceivably may condition bail on immediate addiction treatment for an alleged drug offender, which is designed to prevent re-offending while on bail. State v. Johnson, supra, 61 N.J. at 363, n. 7, 294 A.2d 245 (discussing but not deciding whether treatment may be imposed as a condition of bail "to protect the addict against himself and to protect the public against the addict."). Nonetheless, our Supreme Court has cautioned courts to impose sparingly any conditions on bail that are unrelated to assuring the defendant's appearance. See State v. Korecky, 169 N.J. 364, 384, 777 A.2d 927 (2001) ("Our bail system should not seek to guarantee the behavior of a defendant while he or she is out on bail.").
[4] After Zorillo, Rhode Island's Legislature amended the statute to require the State initially to show "reasonable cause" to inquire into the bail's source, and deleted the provision allocating a burden of persuasion to the defendant. R.I. Gen. Laws § 12-13-23.