ELMA GARRISON YOUNG, PLAINTIFF-RESPONDENT, v. VICTORIA SABOL, EXECUTRIX OF THE ESTATE OF JENNIE P. MATLACK, DECEASED, HELEN McCLOSKEY, VICTORIA SABOL AND WALTER HOCHREITER, DEFENDANTS-APPELLANTS.

Argued March 20, 1950—Decided April 24, 1950.

*Mr. William S. Zink* argued the cause for the defendants-appellants (*Messrs. Bleakly, Stockwell & Zink,* attorneys).

*Mr. Joseph B. Perskie* argued the cause for the plaintiff-respondent (*Mr. Augustus S. Goetz,* attorney).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment in favor of the plaintiff, entered in the Chancery Division, in an action for specific performance and impressing a trust on the funds and property of the decedent's estate in the possession of the defendant Victoria Sabol as executrix of the last will and testament of the decedent. The judgment further ordered "that defendant turn over to the executor named in the codicil of May 9, 1946, the assets of the estate of Jennie Matlack to be administered according to the terms of the said will of Jennie P. Matlack dated January 29, 1946."

The complaint alleged an oral agreement made by Jennie P. Matlack to the effect that she would make a will in favor of the plaintiff, and the complaint alleges that the agreement was that if the plaintiff would furnish her (Mrs. Matlack) board, room and nursing care with special services and accommodations as her condition required she would pay the

plaintiff the sum of $12 to $15 a week to cover actual out-of-pocket cost of special food and other incidentals furnished, and would also make and execute her last will and testament wherein she would provide for certain specific bequests approximating between $1,000 and $2,000 to three persons and then devise and bequeath the entire residue of her property in trust for her husband for his life and the remainder thereof to plaintiff, *provided that at the time of her death her home was with the plaintiff*. Specific performance was prayed for and that a trust be impressed upon the assets of the estate in the hands of the defendant executrix. The complaint was amended and a second count added seeking damages on a *quantum meruit* for services rendered from June 1, 1945, to March 30, 1947, including nursing care, laundry, board, room, etc.

The decedent was in advanced years and was quite ill from diabetes. She was partially blind and generally in a debilitated condition at the time she came to live with the plaintiff, who managed a combination rooming house and nursing home, she being a registered nurse.

On January 29, 1946, the decedent had a will drawn along the lines alleged in the complaint, making certain bequests and leaving the rest in trust for her husband and on his death the residue and remainder to the plaintiff "provided my home is with her at the time of my decease." In the latter part of 1946 the decedent's husband died in Philadelphia and the decedent left plaintiff's home and went there apparently to close his estate. While there she took sick in the early part of 1947, was confined to a hospital there and died on March 31, 1947. While she was in Philadelphia she had drawn and executed a will, which was dated October 18, 1946, and a codicil, dated February 8, 1947, at which time she told the lawyer her home was in Philadelphia and not Ocean City.

She was admitted to St. Mary's Hospital in Philadelphia on February 24, 1947. Her condition became gradually worse and she then had a lawyer draw a new Will, dated March 21, 1947, making an entirely different disposition of the property

than was made in either of the prior two wills. She died ten days later and this will was finally admitted to probate in the Orphans' Court of Cape May County, after contest of its probate. The decree of probate was dated December 16, 1947, no appeal was taken therefrom and the defendant here proceeded to administer the estate according to its terms.

The trial court found that the plaintiff had sustained the allegations of the complaint and had established an agreement to devise the major part of her estate to the plaintiff for the considerations set forth in the complaint. We are not in accord with that conclusion. The real issue in this matter is whether the facts as developed bring the plaintiff within the admittedly applicable legal principles involved. The obligation of plaintiff was to prove by clear, cogent and convincing evidence an oral agreement on the part of the decedent, supported by a valuable consideration, and to prove that the agreement was mutual, definite and certain as to its terms and subject matter. In addition the plaintiff had to show by acts exclusively referable to the oral agreement such part-performance as will exclude the operation of the Statute of Frauds. It is only when these requirements are met that the plaintiff is entitled to specific performance of an oral agreement to bequeath and devise an state. *Epstein v. Fleck,* 141 *N. J. Eq.* 486 (*E. & A.* 1948); *White v. Risdon,* 140 *N. J. Eq.* 613, 614 and 615 (*Ch.* 1947); *Poloha v. Rumane,* 137 *N. J. Eq.* 167; affirmed, 140 *N. J. Eq.* 396 (*E. & A.* 1947); *Hufnagel v. Scholp,* 138 *N. J. Eq.* 16 (*Ch.* 1946); *Laune v. Chandless,* 69 *N. J. Eq.* 186 (*Ch.* 1926).

The testimony of the two principal witnesses, in our view, failed to establish the agreement with the certitude that is necessary. The assistant cashier of an Ocean City bank testified that in discussing the 1946 will, the decedent said "she was going to take care of her (Mrs. Young) and that this was to take the place of what ordinarily would be paid as room and board, that she wanted Elma to have the balance of her estate" and "She told me that Elma was taking care of her and that she was living with her and she wanted to

remain here because Elma had been doing everything for her." This witness did not speak of any oral agreement and what was said is perfectly consistent with the provisions of her last will, and the provisions of the prior will that the residue was to go to plaintiff only in case her home was with plaintiff at the time of her death is not consistent with the theory of a binding obligation to bequeath her estate to the plaintiff.

The other witness testified she heard a conversation between deceased and the plaintiff as to room and board for deceased and her husband, yet it is clear that the husband never lived in the plaintiff's house. This witness testified the plaintiff told deceased that the accommodations she wanted would cost between $60 and $70 a week, whereupon the deceased said she could not afford to pay it that way because she did not have rents coming in in that amount and she only wanted to pay $12 a week which would be the actual output of cash from the plaintiff's pocket. And it was then suggested she wanted to leave everything to the plaintiff. There was further testimony by this witness that other people were waiting to be paid by Mrs. Matlack so the plaintiff said she would agree to have Mrs. Matlack stay there until she could pay and when she got this income to pay the difference, and that Mrs. Young said she would rather have the cash as she went along but if the only way she could obtain it was under the will she was willing to accept the will.

This testimony hardly meets the test above set forth. No consideration is shown and nothing which would oblige the plaintiff to keep Mrs. Matlack for any length of time, nor was there specified precisely what she was to do for Mrs. Matlack aside from providing board, room and some nursing services. It was open for Mrs. Matlack to leave the boarding house at any moment and for any reason, and Mrs. Young could have closed her boarding place entirely for any reason or could have moved out of the city or her death might have ended the enterprise. In any event, there was no obligation created on her part to provide board, lodging, nursing services for any definite length of time. Further, there is proof the plaintiff

by letter presented a bill or claim against the estate of Mr. Matlack for board for Mrs. Matlack at the rate of $15 a week for a period from January 1 to October 11, 1946, in the sum of $580. This action of the plaintiff is in complete contradiction of the allegation that there was an oral agreement by Mrs. Matlack to leave the plaintiff by will most of her estate.
Our examination of the evidence in the entire case creates a doubt in our minds of the existence of a clear, definite and unequivocable contract to devise. To doubt is to deny. The plaintiff has failed to carry the burden of proof resting upon her. *Epstein v. Fleck, supra.*

The judgment of the Chancery Division on the first count of the complaint is reversed and the cause remanded to the Chancery Division so that a judgment in favor of the defendants and against the plaintiff on this count of the complaint may be entered.

This leaves undisposed of the second count of the amended complaint in which a cause of action for damages on a *quantum meruit* for board, rent and nursing services is set forth. On the entry of the judgment aforesaid the plaintiff may have her day in court on this count.

*For reversal and remandment*—Chief Justice VANDERBILT, Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For affirmance*—None.