**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5040-18T1

DENNIS AIELLO,

      Plaintiff-Appellant,

v.

ZBIGNIEW ZAWISTOWSKI and
TEAM PRECISION AUTO, LLC
d/b/a PRECISION CHRYSLER
JEEP DODGE RAM, LLC,

      Defendants-Respondents.

and

BRUCE WAINWRIGHT and
JUSTIN WAINWRIGHT,

      Defendants.

_____

Argued October 1, 2020 – Decided October 22, 2020

Before Judges Sumners, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000128-15.

Batya G. Wernick, argued the cause for appellant.

Steven C. Schechter argued the cause for respondents.

PER CURIAM

Plaintiff Dennis Aiello's claim seeking an ownership interest in an automobile dealership returns to us after we reversed the first Chancery judge's order granting summary judgment dismissal of Aiello's complaint. Aiello v. Zawistowski, No. A-1244-16T2 (App. Div. July 11, 2018). Following our remand, a different Chancery judge sitting as the fact-finder granted defendants Zbigniew Zawistowski and Team Precision Auto, LLC 's motion for directed verdict dismissing Aiello's suit. We affirm because we conclude the judge: (1) did not abuse her discretion in evidentiary rulings precluding the admission of audio recordings transcripts unilaterally redacted by Aiello and redacting the deposition testimony of an unavailable witness arising from unrelated litigation; (2) properly applied Rule 4:37-2(b) in granting a directed verdict in favor of defendants; and (3) did not err in finding Aiello was not entitled to an equitable remedy.

I.

To provide context to our decision, we briefly discuss the background of this litigation. In 2015, Aiello filed suit asserting breach of a partnership

A-5040-18T1

agreement and sought: monetary damages; a declaratory judgment that he owned fifty percent of Team Precision Auto and the Butler Chrysler Jeep Dodge dealership (the dealership); and an accounting of all of the dealership's earnings, profits and assets. Aiello alleged his fifty percent interest in the dealership owned and operated by Bruce Wainwright and Justin Wainwright[1] was based upon an oral agreement he allegedly made with Zawistowski and Bruce[2] in April 2011. Three months later, the dealership was acquired by Team Precision Auto, owned by Zawistowski, who renamed it Precision Chrysler Jeep Dodge Ram – with no mention of Aiello in the final ownership documents.

Three years before filing suit, Aiello filed a personal petition for Chapter Seven bankruptcy without indicating he had an interest in the dealership or claims against defendants seeking to secure his interest in the dealership. Shortly thereafter he filed a personal property amendment to his bankruptcy petition to include a "breach of contract suit against former business partner," for other contingent and unliquidated claims. However, this apparently

---

[1] Summary judgment granted in favor of the Wainwrights was not appealed.

[2] To avoid confusion with Justin Wainwright, we refer to Bruce by his first name; we mean no disrespect.

A-5040-18T1

references a dispute against individuals other than Zawistowski and the Wainwrights.

After an initial Chancery judge issued an order granting defendants' summary judgment motion to dismiss Aiello's suit, we reversed and remanded for trial because the judge erred in failing to view the evidence in the light most favorable to Aiello, the non-moving party, as required by Rule 4:46-2(c) in deciding the motion. In doing so, we noted defendants' defenses of laches, judicial estoppel related to Aiello's failure to identify his interest in his bankruptcy petition, and that Aiello lacked standing to seek an ownership interest in the dealership, were not a basis for the judge's grant of summary judgment. Consequently, we did not foreclose defendants from raising those defenses, or others, for that matter, set forth in their pleadings. In addition, we denied defendants' cross-appeal challenging a second Chancery judge's order denying Team Precision Auto's motion for sanctions under N.J.S.A. 2A:15-59.1 and Rule 1:4-8, for filing a frivolous action.

At the remanded trial, a new Chancery judge granted defendants' motion for directed verdict following the conclusion of Aiello's presentation of evidence. This appeal ensued.

II.

4

We address the issues raised in this appeal in the order in which they transpired following remand.

Aiello challenges two of the Chancery judge's (hereinafter "trial judge" or "judge") evidentiary rulings. The judge granted defendants' motion in limine to exclude admission of transcripts memorializing portions of recordings Aiello proffered because he failed to provide the recordings in their entirety to defendants as previously ordered and unilaterally edited them.[3] In case management orders of April 14, 2016 and May 4, 2016, Aiello was directed to produce transcripts of all recordings, and advised that failure to do so would result in the recordings being inadmissible. The judge also ordered redaction of the transcript of Bruce's deposition testimony in connection with the Wainwrights' lawsuit against Zawistowski and a recording of Bruce's voice message to Aiello. Bruce was unavailable to testify at trial.

It is well-settled that "[w]hen a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City

---

[3] Prior to trial, Aiello unsuccessfully moved to re-open discovery to allow him to submit allegedly new audio recordings he found while his appeal was pending, and to allow for depositions limited to the newly discovered audio recordings. This ruling has not been appealed.

A-5040-18T1

of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).  Appellate courts "will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). We discern no abuse of discretion in the judge's rulings.

A. Recordings

Before and after our remand, Aiello was directed to make the recordings accessible to defendants by providing them the original cassette recordings. Claiming he feared losing the cassettes if they were turned over to opposing counsel, Aiello instead provided edited, or, as the judge phrased it, "cherry-picked" versions of the recordings he deemed most relevant.  Aiello describes the recordings as "portions of telephone [conversations] between him and [d]efendants" and from his meetings with defendants.[4]  Aiello created the recordings, transcribed them, and produced them before the discovery end date. He admits the recordings were at times hard or impossible to understand but argues the discernable portions are admissible.

Aiello contends the recordings were probative of certain events he alleged occurred but Zawistowski denied.  Specifically, he notes the recordings

---

[4]  Aiello's reference to defendants includes Zawistowski and the Wainwrights.

A-5040-18T1

supported his claims that he "met with [d]efendants, [and] was engaged with . . . Zawistowski for a long period of time . . . [wherein he] engag[ed] in numerous conversations with . . . [Zawistowski.]" Aiello asserts the recordings supported his contention that defendants lacked credibility. He also suggests the recordings proved the terms of the partnership agreement, thereby explaining why he took no action to pursue a written agreement with Zawistowski after Zawistowski "kept putting him off."

To support his position, Aiello relies upon N.J.R.E. 402, which provides "[a]ll relevant evidence is admissible" unless excluded by evidential rule or statute, and N.J.R.E. 403, which provides "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) [u]ndue prejudice, confusion of issues, or misleading the jury . . . ." He also cites State v. Nantambu, 221 N.J. 390, 408 (2015) (quotations omitted), to establish the intelligible portions of his recording should have been admitted because the Court held there that "[w]here evidence is admissible for one purpose but not for another, the trial court upon request[ ] shall restrict the evidence to its proper scope and shall instruct the jury accordingly." He further points to State v. Zicarelli, 122 N.J. Super. 225, 239-40 (App. Div. 1973), where this court admitted the recording at issue despite its inaudible portions, because it proved

7

the intimacy between the parties and was probative of the conspiracy to suppress prosecution of a gambling enterprise.

We find instructive the trial judge's reliance on State v. Farthing, where this court held that, consistent with the spirit of N.J.R.E. 106, the evidentiary doctrines of testimonial completeness "operate to prevent a [party] from . . . selectively introducing pieces of . . . evidence for the [party's] own advantage." 331 N.J. Super. 58, 81 (App. Div. 2000) (quoting State v. James, 144 N.J. 538, 554 (1996)). Additionally, the judge properly relied upon Nantambu, 221 N.J. at 410-11, where our Supreme Court ruled:

> [A] trial court must employ a two-part analysis when considering the admissibility of a recording containing partial omissions. The [C]ourt must first determine if the omission is unduly prejudicial; that is, does the omission adversely impact the trustworthiness of the recording. That is an objective analysis that should focus on the evidentiary purposes for which the recording is being offered. If the trial court in its discretion finds the omission unduly prejudicial, it must then consider whether the omission renders all or only some of the recording trustworthy, and suppress only the portion of the recording that is rendered untrustworthy.

Here, the judge found the recording was not trustworthy because it was "incomplete . . . [and t]he portions of the recording provided were selected by the plaintiff according to what he deemed relevant and the full, original

8

recordings have never [been] produced for the defendants' review." Due to Aiello's failure to produce the complete recordings, the judge properly applied her discretion in ordering redaction.

B. Deposition Transcript

Because Bruce was unavailable to testify at trial, the transcript of his deposition from an unrelated action against Zawistowski involving Team Precision Auto was admitted into evidence subject to the judge's redactions. During the deposition, a voice message, allegedly from Bruce to Aiello, was played. Bruce confirmed it was his voice leaving the message. As such, the voice message and Bruce's confirmation were transcribed in the deposition. Aiello contends the message shows that he and Bruce were "in discussions . . . about the [partnership] agreement at issue . . . and that [he] was more involved than the [d]efendants[5] were claiming. . . . [and] that [d]efendants were not being truthful." The judge also redacted portions of Bruce's deposition testimony wherein he stated: (1) "Zawistowski's penchant for making promises to others and then breaking those promises[;]" (2) he was "suing [Zawistowski] for breach of promises he had made to them with respect to Team Precision Auto[;]" and

---

[5] It appears this reference is to Zawistowski and Bruce.

(3) Zawistowski's history of "ma[king] promises to employees at Team Precision Auto and . . . not keep[ing] th[em]."

We discern no abuse of discretion in the judge's decision to bar admission of the voice message and to redact portions of Bruce's deposition testimony. Regarding the voice message, we agree with defendants' assertion that inadmissible hearsay statements were made, and the original complete recordings were never produced as ordered. There is no merit to Aiello's contention that the evidence was probative, not outweighed by undue prejudice, and established Zawistowski's lack of credibility.

We reach the same conclusion regarding redaction of Bruce's deposition testimony. Admission of deposition testimony is subject to all other rules of evidence. R. 4:16-2. The judge determined Bruce's comments about Zawistowski arose in a different litigation and were based on Bruce's belief that Zawistowski treated "many people in the same manner." As to the latter, the judge specifically found the deposition testimony provided no names or specific instances to prove habit, as Aiello contended and still maintains in this appeal.

Aiello's reliance upon N.J.R.E. 401, 402, and 406 to admit Bruce's testimony as evidence of Zawistowski's habit to renege on promises and mistreat people is misplaced. Except in certain circumstances, relevant evidence, which

is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action[,]" is admissible. N.J.R.E. 401, 402. See also State v. Castagna, 400 N.J. Super. 164, 174 (App. Div. 2008). The evidence must be probative of a fact that is "really in issue in the case[,]" as determined by reference to the applicable substantive law. State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)).

"While evidence of a character trait generally is inadmissible, evidence pertaining to a 'habit' is permitted [under N.J.R.E. 406]." Showalter v. Barilari, Inc., 312 N.J. Super. 494, 512 (App. Div. 1998). Under the rule, "[e]vidence, whether corroborated or not, of habit or routine practice is admissible to prove that on a specific occasion a person . . . acted in conformity with the habit or routine practice." N.J.R.E. 406(a). "Evidence of specific instances of conduct is admissible to prove habit or routine practice if evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice." N.J.R.E. 406(b).

The purpose of habit evidence is to show "the person's regular practice of responding to a particular kind of situation with a specific type of conduct." State v. Kately, 270 N.J. Super. 356, 362 (App. Div. 1994) (citation omitted).

11

Hence, "[b]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Sharpe v. Bestop, Inc., 158 N.J. 329, 331, (1999) (quoting Simplex, Inc. v. Diversified Energy Systems, Inc., 847 F.2d 1290, 1293 (7th Cir. 1988)). To that end, "two factors are considered controlling as a rule: adequacy of sampling and uniformity of response." Id. at 332 (citation omitted). See Jones v. S. Pac. R.R., 962 F.2d 447, 449 (5th Cir. 1992) (holding that nine diverse safety violations do not show "habit" of negligence).

Here, Bruce's testimony is not probative of whether Aiello reached an agreement with Zawistowski to form an automobile dealership partnership because the testimony does not relate to Aiello's dealings with Zawistowski. Moreover, as the judge found, Bruce's testimony lacks sufficient specificity to support the habit evidence Aiello seeks to admit. There is no specific context to the accusations against Zawistowski, and the individuals who supposedly made the comments are not identified in order to allow Zawistowski to verify their comments.

The applicability of N.J.R.E. 406 is of no consequence, however, as the judge properly excluded the evidence under N.J.R.E. 401 and 402. See Griffin,

225 N.J. at 420 (demonstrating that while certain evidence may "not [be] subject to exclusion under" other evidentiary "rule[s], it nonetheless [can] be barred pursuant to N.J.R.E. 403"). Likewise, the proffered evidence was excludible under N.J.R.E. 404(b), barring introduction of "[e]vidence of other . . . wrongs, or acts . . . to prove a person's disposition in order to show that on a particular occasion the person acted in accordance [therewith,]" which, in this case, appears to be Aiello's stated purpose. See Harris v. Peridot Chem. (N.J.), Inc., 313 N.J. Super. 257, 276-83 (App. Div. 1998) (acknowledging the application of N.J.R.E. 404(b)'s prohibition in civil cases). In sum, the redacted testimony offered by Aiello was inadmissible hearsay by Bruce that defendant has lied to other people and was properly excluded by the judge.

Lastly, Aiello asserts Bruce's redacted testimony was admissible under N.J.R.E. 607 as "extrinsic evidence relevant to the issue of credibility," and under N.J.R.E. 608 as an attack on Zawistowski's credibility as a witness by showing "evidence in the form of opinion or reputation . . . relate[d] only to the witness' character for truthfulness or untruthfulness."

Pursuant to N.J.R.E. 607, "[f]or the purpose of attacking or supporting the credibility of a witness, any party . . . may examine the witness and introduce extrinsic evidence relevant to the issue of credibility . . . ." "Although extrinsic

A-5040-18T1

evidence may be admitted to impeach a witness . . . its probative value as impeachment evidence must be assessed independently of its potential value as substantive evidence." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 494 (1999). As indicated above, Bruce's redacted testimony had no relevant or probative value in establishing the existence of a partnership agreement between Aiello and Zawistowski; thus, it is not admissible under N.J.R.E. 607.

Pursuant to N.J.R.E. 608(a), a party may attack a witness's credibility with "evidence in the form of opinion or reputation" relating to the witness's propensity for truthfulness or untruthfulness. However, evidence in a civil trial of "specific instances of conduct" involving untruthfulness, other than evidence of a conviction, is inadmissible to impeach a witness's credibility. N.J.R.E. 608(c); N.J.R.E. 609; see also Delgaudio v. Rodriguera, 280 N.J. Super. 135, 142-44 (App. Div. 1995) (stating that a Board of Medical Examiners' opinion that a witness had a "propensity . . . to play somewhat fast and loose with the truth" was admissible under N.J.R.E. 608, although evidence of the underlying conduct was not).

Bruce's redacted testimony alleging Zawistowski was untruthful was made in the context of his civil suit against Zawistowski. The testimony was not admissible under N.J.R.E. 608(a) because it included specific instances of

14

conduct: Zawistowski's breach of promises to him and to employees of Team Precision Auto.

III.

The main thrust of Aiello's appeal is his contention that the trial judge erred in granting a direct verdict in favor of defendants because in determining he did not have an oral agreement forming an automobile dealer partnership agreement with Zawistowski, the judge failed to draw all factual inferences in his favor and improperly required him to prove his claim by clear and convincing evidence instead of by preponderance of the evidence. We are unpersuaded.

Rule 4:37-2(b) permits the court to grant a motion for involuntary dismissal of any action, or part thereof, at the end of the plaintiff's case on "the ground that upon the facts and upon the law[,] the plaintiff has shown no right to relief." "Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid. A dismissal is appropriate when "no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2(b) (2021). Stated another way, a directed verdict is proper "if the evidence and uncontradicted testimony is 'so plain and

complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind . . . .'" Frugis v. Bracigliano, 177 N.J. 250, 270 (2003) (quoting Ferdinand v. Agric. Ins. Co., 22 N.J. 482, 494 (1956)).

Applying these principles, we agree with the trial judge that Aiello, even affording him the benefit of legitimate inference of his evidence, failed to prove he reached an oral agreement with Zawistowski forming an automobile dealer partnership agreement. It is well established that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). "As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019) (citing Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953)).

In addition, the parties must agree "to the essential terms" of the agreement. Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438-39 (App. Div. 2016) (quoting Mosley v. Femina Fashions Inc., 356 N.J. Super. 118, 126 (App. Div. 2002)). "Where the parties do not agree to one

or more essential terms, however, courts generally hold that the agreement is unenforceable." Weichert, 128 N.J. at 435. This is so because "the terms of a contract must be definite and certain so that a court may order with precision what the parties must do." Graziano v. Grant, 326 N.J. Super. 328, 339 (App. Div. 1999) (citing Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 552 (1982)). An enforceable contract is only created where the parties agree on the essential terms and agree to be bound by those terms. Weichert, 128 N.J. at 435. And to establish the existence of a contract, our Supreme Court held seventy years ago there must be proof by clear and convincing evidence. Young v. Sabol, 4 N.J. 309, 312 (1950).

Based upon our review of the record, we discern no reason to upset the directed verdict to defendants given the lack of proofs Aiello presented to establish he had an enforceable oral agreement forming an automobile dealership partnership with Zawistowski. As highlighted by defendants:

- Aiello admitted he did not meet Zawistowski until 2011 despite alleging in his complaint that there was a partnership agreement in 2010;

- Aiello testified that when he filed a petition for bankruptcy in December 2012, he stated he did not believe he had any interest in the dealership;

- Aiello's deceased long-time accountant Arnold Stein testified at deposition that after attending a meeting with Zawistowski and Aiello to discuss a possible automobile dealership partnership, he did not believe a partnership agreement had been finalized, nor was he made aware that an agreement was reached;

- Aiello admitted there were never any discussions between him, Zawistowski, and the Wainwrights regarding the percentage of ownership or profits or moving forward with the Wainwrights' continued involvement in the dealership;

- Aiello at times testified he entered into "an enforceable oral contract" with Zawistowski at their first dinner meeting in May 2011 but there are separate agreements;

- Aiello gave inconsistent testimony about three meetings with his alleged partners and what occurred at them, including stating at different times that an agreement was not reached at the meetings;

A-5040-18T1

- Aiello testified that several important topics were not discussed with him, such as the amount of money Zawistowski would have to invest, ownership of profits each partner would receive (sometimes addressed by him as 50% or 45% of the profits), or what entity would be formed; and

- Aiello testified that he did not know what position Bruce would have at the dealership.

In addition, we join the judge in concluding Aiello's alleged partnership terms – there was no termination date; neither party could individually end the partnership; and the partnership was to last in perpetuity – are not what a person of ordinarily intelligent mind would enter into. Aiello's contention the judge should have drawn inferences in his favor is simply without merit. There was no definitive evidence beyond Aiello's unsubstantiated claims.

There is likewise no merit to Aiello's contention the trial judge erred in granting a directed verdict by relying on defendants' defenses of unjust result, Aiello's failure to include his partnership claim in his initial bankruptcy filing, Aiello not being a licensed car dealer, waiver, laches, estoppel, and the statute of frauds. Neither the judge, nor we, find those defenses relevant to the appropriate dismissal of Aiello's complaint.

A-5040-18T1

Our remand was based solely on the initial Chancery judge's failure on summary judgment to view Aiello's claims in the light most favorable to Aiello. That is not the standard when considering a motion for directed verdict. We are convinced that legitimate inferences of Aiello's evidence, the standard applicable in consideration of a directed verdict motion, does not support his claim that there was a meeting of the minds that he was a partner in the dealership.

Applying the clear and convincing standard of evidence to establish the existence of an oral contract, the judge correctly reasoned defendants were entitled to a directed verdict. Moreover, the trial judge acknowledged she would have made the same finding under the preponderance of the evidence standard. She stated:

> Here simply, there is simply not enough even by a preponderance of the evidence to establish that there was ever a meeting of the minds of the terms that Mr. Aiello has, has . . . testified to. And even though . . . I find him earnest, I find . . . he is simply mistaken in his belief that the two parties entered into anything that could resemble an agreement and be enforceable.

Consequently, we reject Aiello's argument the wrong standard of proof was applied in dismissing his claim that he had an oral partnership agreement.

IV.

Finally, Aiello's contention the trial judge, siting as a judge of equity, should have provided him some form of equitable relief for finding Zawistowski an automobile dealership is without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E).

Aiello conflates the judge's finding that he located an automobile dealership for Zawistowski with evidence he and Zawistowski reached an oral agreement that went unfulfilled. As mentioned above, the judge properly found Aiello failed to prove he had an oral agreement to form an automobile dealership partnership with Zawistowski. The judge also found that Aiello failed to establish he suffered any damages, and that his complaint did not demand equitable relief. Thus, the judge determined:

> But certainly there was no offer, there was no acceptance, there was no testimony regarding any sort of conversation, much less an offer and acceptance, and there certainly isn't any consideration for that promise.
>
> . . . .
>
> There was some performance in this case. Mr. Aiello did, in fact, introduce Mr. Zawistowski to the Wainwrights, [who] eventually formed a partnership. However, there is no equitable [relief] claimed in the complaint at all. . . . There was no claim for unjust enrichment, there is no claim for detrimental reliance, there is no claim for promissory estoppel, and complaints have to give the parties at least a reasonable understanding of what's being pursued.

21

Here, none of that was addressed. And although I do find that there was some performance that may have entitled Mr. Aiello to some sort of payment, there certainly wasn't the elements, those elements of unjust enrichment, detrimental reliance, those weren't met.

What we have is Mr. Aiello asked 15 to 20 people about car dealerships, even though they were a dime a dozen. He asked at the used car auction. That's where his contacts were. That was his expertise, the used car auction. Despite that, the recommendation came from his son, . . . Justin Aiello, who said why don't you introduce . . . Mr. Zawistowski to the Wainwrights? . . . So, it wasn't as a result of his contacts, and I don't find that he expended money such that he's proved damages in reliance on a promise of a partnership in the future.

I also don't see that he's established any damages. Damages is necessary to prove a breach of a contract claim.

The judge's reasoning is sound; therefore, we discern no reason to conclude Aiello is entitled to any equitable relief based on his complaint as well as his lack of proofs.

To the extent we have not addressed any of Aiello's remaining arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-5040-18T1